IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
ENTERED

MAY  5 2006

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| MARY JEAN MCCARTER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-4159 |
| | § | |
| HARRIS COUNTY, TEXAS, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION

Pending before the court[1] is Defendant's Motion for Summary Judgment (Docket Entry No. 17).  The court has considered the motion, all relevant filings, and the applicable law.  For the reasons set forth below, the court **GRANTS** Defendant's motion.

### I.  Case Background

Plaintiff filed this employment action against her former employer for religion and sex discrimination[2] under the Civil Rights Act of 1964 ("Title VII").[3]

Defendant hired Plaintiff in December 2001.[4]  Defendant notified Plaintiff of the requirement that she wear navy blue pants

---

[1]     The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docket Entry No. 11.

[2]     Plaintiff lists sex discrimination in her complaint, but alleges no supporting facts.

[3]     42 U.S.C. § 2000e et seq.

[4]     Appendix of Exhibits in Support of Defendant's Motion for Summary Judgment ("Defendant's Appendix"), Docket Entry No. 18, Ex. 3, Affidavit of Marcie Nolan, p. 1; Plaintiff's Response, Docket Entry No. 19, Ex. 1, Plaintiff's Deposition, p. 15.

and a blue front-button shirt.[5]  Defendant provided several
uniforms to Plaintiff.[6]  For several months, Plaintiff wore the
uniform without objection.[7]  However, in April 2002, Plaintiff
converted faiths to the Pentecostal church.[8]  One of the tenets of
her new faith was that women could not wear men's clothing,
including pants.[9]  Explaining this to her supervisor, Plaintiff
requested permission to wear a long, tapered skirt.[10]  Her
supervisor allowed her to wear a skirt and accommodated her
inability, because of her uniform violation, to perform certain
job-related tasks by assigning another worker to climb ladders for
Plaintiff.[11]

     In early 2004, Plaintiff's supervisor retired.[12]  His
replacement reminded Plaintiff of Defendant's uniform policy and

---

[5]     Defendant's Appendix, Docket Entry No. 18, Ex. 3, Affidavit of Marcie
Nolan, pp. 1-2; Plaintiff's Response, Docket Entry No. 19, Ex. 1, Plaintiff's
Deposition, p. 18.

[6]     Defendant's Appendix, Docket Entry No. 18, Ex. 3, Affidavit of Marcie
Nolan, p. 1.

[7]     Defendant's Appendix, Docket Entry No. 18, Ex. 3, Affidavit of Marcie
Nolan, p. 2; Plaintiff's Response, Docket Entry No. 19, Ex. 1, Plaintiff's
Deposition, p. 18.

[8]     Plaintiff's Response, Docket Entry No. 19, Ex. 1, Plaintiff's
Deposition, p. 19.

[9]     Id.

[10]     Id. at p. 17.

[11]     Id. at pp. 17, 20-21.

[12]     Defendant's Appendix, Docket Entry No. 18, Ex. 3, Affidavit of Marcie
Nolan, p. 3; Plaintiff's Response, Docket Entry No. 19, Ex. 1, Plaintiff's
Deposition, p. 30.

told her to wear pants.[13]   Plaintiff refused, repeating her religious objection.[14]   Plaintiff continued to wear a long, tapered skirt and, on March 25, 2004, tripped and fell while standing on steps to perform her duties.[15]   Plaintiff scraped her left arm and injured her ankle in the fall.[16]   She applied for and received workers' compensation benefits for her injuries.[17]

In a memorandum to Plaintiff, dated March 29, 2004, Defendant's manager of employee relations, Marcie Nolan ("Nolan"), explained that Defendant required employees in her job category to wear a uniform.[18]   The memorandum particularly pointed to the safety risks involved in climbing stairs and ladders and operating machinery in a long skirt.   The memorandum concluded, "Not all Harris County jobs require employees to wear a uniform.   If you are dissatisfied with the decision [not to allow you to wear a long

---

[13]   Defendant's Appendix, Docket Entry No. 18, Ex. 3, Affidavit of Marcie Nolan, p. 3; Plaintiff's Response, Docket Entry No. 19, Ex. 1, Plaintiff's Deposition, p. 31.

[14]   Plaintiff's Response, Docket Entry No. 19, Ex. 1, Plaintiff's Deposition, p. 31.

[15]   Defendant's Appendix, Docket Entry No. 18, Ex. 3, Affidavit of Marcie Nolan, p. 3; Ex. 4, Affidavit of Arcadio Avalos, Jr., pp. 2-3, and Attach. B, investigation report; Plaintiff's Response, Docket Entry No. 19, Ex. 1, Plaintiff's Deposition, pp. 31-33.

[16]   Defendant's Appendix, Docket Entry No. 18, Ex. 3, Affidavit of Marcie Nolan, p. 3; Plaintiff's Response, Docket Entry No. 19, Ex. 1, Plaintiff's Deposition, pp. 32-33.

[17]   Defendant's Appendix, Docket Entry No. 18, Ex. 3, Affidavit of Marcie Nolan, p. 4.

[18]   Id. at Attach. D, Memorandum from Marcie Nolan to Plaintiff dated Mar. 29, 2004.

3

skirt], you are welcome to contact Harris County's Human Resources
and apply for any other position with Harris County for which you
qualify."[19]

In response to Plaintiff's fall, Defendant formed an accident
review board that included Plaintiff, her supervisor, her section
manager, and Defendant's safety coordinator.[20] The review board met
on March 30, 2004, to discuss the cause of Plaintiff's on-the-job
accident and injury.[21] Plaintiff stated that she had become dizzy
as a result of problems with her eyeglass prescription.[22] The
safety coordinator and Plaintiff's supervisor opined that
Plaintiff's uniform violation was a major cause of the accident.[23]
Defendant released Plaintiff from duty until she could return to
work in a proper uniform with a doctor's release.[24]

---

[19]     Id.

[20]     Defendant's Appendix, Docket Entry No. 18, Ex. 4, Affidavit of
Arcadio Avalos, Jr., p. 3, and Attach. B, memoranda from Arcadio Avalos, Jr., to
Marcie Nolan dated Mar. 30, 2004 and May 4, 2004; Plaintiff's Response, Docket
Entry No. 19, Ex. 1, Plaintiff's Deposition, pp. 35-37.

[21]     Defendant's Appendix, Docket Entry No. 18, Ex. 4, Affidavit of
Arcadio Avalos, Jr., p. 3, and Attach. B, memoranda from Arcadio Avalos, Jr., to
Marcie Nolan dated Mar. 30, 2004 and May 4, 2004; Plaintiff's Response, Docket
Entry No. 19, Ex. 1, Plaintiff's Deposition, pp. 36-37.

[22]     Defendant's Appendix, Docket Entry No. 18, Ex. 4, Affidavit of
Arcadio Avalos, Jr., p. 3, and Attach. B, memorandum from Arcadio Avalos, Jr.,
to Nolan dated Mar. 30, 2004; Plaintiff's Response, Docket Entry No. 19, Ex. 1,
Plaintiff's Deposition, p. 39.

[23]     Defendant's Appendix, Docket Entry No. 18, Ex. 4, Affidavit of
Arcadio Avalos, Jr., p. 3, and Attach. B, memoranda from Arcadio Avalos, Jr., to
Marcie Nolan dated Mar. 30, 2004 and May 4, 2004 and investigation report.

[24]     Defendant's Appendix, Docket Entry No. 18, Ex. 4, Affidavit of
Arcadio Avalos, Jr., p. 3, and Attach. B, memoranda from Arcadio Avalos, Jr., to
Marcie Nolan dated Mar. 30, 2004 and May 4, 2004 and investigation report;
Plaintiff's Response, Docket Entry No. 19, Ex. 1, Plaintiff's Deposition, p. 40.

4

After the meeting, Plaintiff met with Nolan to discuss other available positions.[25]  Plaintiff stated that she was unwilling to climb ladders.[26]  Nolan explained that all entry-level maintenance positions, like the one Plaintiff currently held, involved work on ladders.[27]  Other entry-level positions required mechanical training or preferred bilingual skills, neither of which Plaintiff had.[28]  Plaintiff applied for the position of information clerk, an entry-level position for which bilingual skills were preferred.[29]  A bilingual applicant was hired instead of Plaintiff.[30]

Plaintiff did not comply with Defendant's return-to-work requirements and was terminated on April 7, 2004.[31]  Plaintiff filed charges with the Equal Employment Opportunity Commission and received a notice of dismissal allowing her to file suit in this court.  Plaintiff filed her Original Complaint on October 28, 2004,

---

[25]    Defendant's Appendix, Docket Entry No. 18, Ex. 3, Affidavit of Marcie Nolan, p. 6; Plaintiff's Response, Docket Entry No. 19, Ex. 1, Plaintiff's Deposition, p. 44.

[26]    Defendant's Appendix, Docket Entry No. 18, Ex. 3, Affidavit of Marcie Nolan, p. 6; see also Plaintiff's Response, Docket Entry No. 19, Ex. 1, Plaintiff's Deposition, pp. 20-23.

[27]    Defendant's Appendix, Docket Entry No. 18, Ex. 3, Affidavit of Marcie Nolan, p. 6.

[28]    Id.

[29]    Id.; see also Plaintiff's Response, Docket Entry No. 19, Ex. 1, Plaintiff's Deposition, pp. 44-45.

[30]    Defendant's Appendix, Docket Entry No. 18, Ex. 3, Affidavit of Marcie Nolan, p. 6.

[31]    Id. at p. 5; see also Plaintiff's Response, Docket Entry No. 19, Ex. 1, Plaintiff's Deposition, p. 51.

alleging violations of Title VII and 42 U.S.C. §§ 1981, 1985, and 1986.[32] In February 2005, the court ordered Plaintiff to perfect service of process on Defendant within thirty days of receipt of the order.[33] The court issued a summons, which was served with the complaint.[34] According to the Return of Service, Mary J. Escobar served the summons and complaint personally upon the defendant.[35] However, attached to the return is a copy of postal cards indicating service by certified mail.[36]

Defendant answered Plaintiff's complaint on April 6, 2005, and raised insufficiency of service of process as an affirmative defense.[37] In May 2005, by order of the court, Plaintiff amended her complaint and pled only Title VII religion and sex discrimination.[38] Defendant filed the pending motion for summary judgment on October 27, 2005, prior to the deadline for filing dispositive motions.[39]

---

[32] Docket Entry No. 1.

[33] Docket Entry No. 3.

[34] Docket Entry No. 4.

[35] Id.

[36] Id.

[37] Docket Entry No. 8.

[38] Docket Entry No. 13. The court notes that Plaintiff filed her amended complaint fifteen days after the deadline set by the court for doing so.

[39] Docket Entry No. 17.

6

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. Id. at 250. The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002). The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." Honore

7

v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).  However, an
employee's subjective belief that he was the victim of
discrimination is insufficient to create an inference of
discriminatory intent.  Lawrence v. Univ. of Tex. Med. Branch at
Galveston, 163 F.3d 309, 313 (5th Cir. 1999).

### III.  Analysis

Defendant moves for summary judgment on two grounds: 1)
Plaintiff did not properly serve Defendant; and 2) Plaintiff can
produce no evidence of intentional discrimination.  The court
addresses these arguments in turn.

### A.  Service

Pursuant to the Federal Rules of Civil Procedure, the court is
authorized to dismiss a civil action for insufficiency of service
of process.  Fed. R. Civ. P. 12(b)(5).  Service upon a governmental
organization must be effected by delivering a copy of the summons
and the complaint to its chief executive officer or by serving the
organization in the manner prescribed by the law of that state for
the service of summons.  Fed. R. Civ. P. 4(j)(2).  In general,
Texas law allows authorized persons to serve the named defendant
either by personal delivery or by registered or certified mail.
Tex. R. Civ. P. 106(a).

Absent proper service of process, the court ordinarily cannot
exercise jurisdiction over a party named as a defendant.  Murphy
Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350

(1999).  When service is challenged, the party responsible for service bears the burden of establishing its efficacy.  <u>Sys. Signs Supplies v. U.S. Dep't of Justice, Wash. D.C.</u>, 903 F.2d 1011, 1013 (5th Cir. 1990).

The summons and complaint must be served on each defendant within 120 days of filing the complaint.  Fed. R. Civ. P. 4(m). Should the plaintiff fail to effect service within that time period, the court may dismiss the action without prejudice or may allow additional time for service.  <u>Id.</u>  However, upon a showing of good cause for the failure of service, the court shall extend the time for service.  <u>Id.</u>  Good cause is more than inadvertence, mistake of counsel, or ignorance of the rules.  <u>See Sys. Signs Supplies</u>, 903 F.2d at 1013.  The plaintiff must show excusable neglect, as well as establish good faith and a reasonable basis for not serving the summons and complaint within the time allowed by the rules.  <u>Id.</u>

Defendant argues that, although Texas rules allow service by certified mail,[40] the rules require that such service be performed

---

[40]     Texas Rule of Civil Procedure 106 states:

(a) Unless the citation or an order of the court otherwise directs, the citation shall be served by any person authorized by Rule 103 by

. . .

(2) mailing to the defendant by registered or certified mail, return receipt requested, a true copy of the citation with a copy of the petition attached thereto.

by a person authorized by the court.[41]   In this case, Defendant continues, "[n]o party in this lawsuit was authorized by Texas law to serve process via certified mail."[42]   Plaintiff responds that, under Texas law,[43] that Defendant waived its right to contest service by answering.

Plaintiff's response is easily dismissed.   Under the federal rules, the failure to raise a defense of insufficiency of process in the first contact with the court waives the defense.   Fed. R. Civ. P. 12(h)(1); see also Flory v. United States, 79 F.3d 24, 25 (5th Cir. 1996).   By raising insufficiency of process in its original answer, Defendant actually preserved the defense.

Because Defendant challenged service, Plaintiff bears the burden of demonstrating that Defendant was properly served. Plaintiff makes no attempt to explain the legitimacy of service. The record contains insufficient information for the court to reach a conclusion on its own.   If the Plaintiff is unable to satisfy

---

[41]     Those who may serve are "(1) any sheriff or constable or other person authorized by law, (2) any person authorized by law or by written order of the court who is not less than eighteen years of age, or (3) any person certified under order of the [Texas] Supreme Court."   Tex. R. Civ. P. 103.

[42]     Defendant's Motion for Summary Judgment, Docket Entry No. 17, p. 18.

[43]     Texas Rule of Civil Procedure 121 states, "An answer shall constitute an appearance of the defendant so as to dispense with the necessity for the issuance or service of citation upon him."

this burden, then she must show good cause for the court to extend the time of service.[44]

Assuming, for purposes of this memorandum, either that service was proper or that Plaintiff should be allowed to perfect service, the court finds that Defendant's second argument for summary judgment is meritorious and warrants dismissal of the case.

### B. Discrimination

Title VII prohibits employers from failing to hire or discharging any individual or otherwise discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). "The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate . . . an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

An employee may establish a prima facie case of discrimination based on religion by showing that:   1) she had a legitimate

---

[44]     Plaintiff filed the complaint on October 28, 2004.  By the court's count, the 120-day time limit for service expired on February 25, 2005.  In its February 8, 2005, order, the court extended the deadline to approximately March 13, 2005, (calculated by adding thirty days to the date of the order, plus three days for mail delivery).  Plaintiff served Defendant on March 17, 2005.  In its timely answer, Defendant challenged the sufficiency of service.  Plaintiff, therefore, has been aware of the alleged defect in service for more than a year and has not attempted to perfect service.

11

religious belief that conflicted with an employment requirement; 2) the employer knew about the belief; and 3) the employer discharged the employee for failing to comply with the employment requirement. Bruff v. N. Miss. Health Servs., Inc., 244 F.3d 495, 499 n.9 (5th Cir.), cert. denied, 534 U.S. 952 (2001). If the employee can produce some evidence in support of a prima facie case, the burden shifts to the employer to demonstrate why accommodating the employee's religious belief would cause the employer undue hardship or to show that the employer offered a reasonable accommodation. Id. at 499-500.

An employer can accommodate the employee's religious belief either by changing work conditions in her current position or by offering to transfer the employee to a reasonably comparable position in which the conflict is less likely to arise. Id. at 500. An accommodation of either type causes an undue hardship when "an employer incurs anything more than a de minimis cost to reasonably accommodate an employee's religious beliefs." Id. (citing Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 84 (1977)). Under certain circumstances, whether an accommodation creates an undue hardship can be decided as a matter of law. See Bruff, 244 F.3d at 501; but see Equal Employment Opportunity Comm'n v. Universal Mfg. Corp., 914 F.2d 71, 74 (1990)(finding that the circumstances of that case raised a question of fact concerning

whether accommodation of the employee's religious beliefs would have caused an undue hardship).

Defendant does not challenge Plaintiff's prima facie evidence of discrimination based on religion. Rather, Defendant argues that it could not accommodate Plaintiff's religious beliefs without undue hardship. Plaintiff counters that Defendant allowed Plaintiff to wear a skirt for almost two years with no negative consequences at all, much less any sign of undue hardship.[45]

Defendant produced ample evidence in support of its argument that demonstrates Plaintiff's uniform violation created an undue hardship as a matter of law. Defendant's safety coordinator testified that Defendant requires every employee working as a building maintenance assistant (the position held by Plaintiff) to wear pants for safety reasons.[46] The pants-only requirement is based on the job duties, which include climbing ladders, cleaning around machinery, and stepping over large objects.[47] As further evidence of the safety risk, Defendant points to the conclusion reached by Defendant's safety coordinator and Plaintiff's

---

[45] The parties also debate whether Defendant's articulated reason was a pretext for discrimination. However, the pretext analysis is not relevant to the examination of a religion discrimination claim. See Bruff, 244 F.3d at 499-500 (stating analytical framework for religion discrimination claim that does not include pretext analysis); Weber v. Roadway Express, Inc., 199 F.3d 270, 273 (5th Cir. 2000)(same).

[46] Defendant's Appendix, Docket Entry No. 18, Ex. 4, Affidavit of Arcadio Avalos, Jr., p. 1.

[47] Defendant's Appendix, Docket Entry No. 18, Ex. 4, Affidavit of Arcadio Avalos, Jr., p. 2.

13

supervisor that wearing a skirt caused Plaintiff's on-the-job fall
in 2004.[48]   Additionally, Plaintiff admitted that she refused to
climb ladders and that her supervisor assigned another worker to
help Plaintiff complete tasks, such as changing lightbulbs, that
called for the use of a ladder.[49]   In combination, the increased
safety risks and the increased labor demands clearly would involve
more than de minimis costs for Defendant to accommodate Plaintiff's
request.

The Fifth Circuit has held as much in a virtually identical
case.   See Johnson v. Sears Roebuck & Co., No. 02-31169,66 Fed.
Appx. 523, 2003 WL 21016128, at *1 (5th Cir. Apr. 9,
2003)(unpublished).     There,   a   woman   brought   a   religion
discrimination claim against Sears because she was not hired as a
stocker based on her refusal, for religious reasons, to wear pants.
Id.   The appellate decision affirmed the district court opinion
"essentially for the reasons stated by the district court."   Id.

The district court held that, as a matter of law, the
accommodation of allowing an employee to wear a skirt or dress when

---

[48]    See Defendant's Appendix, Docket Entry No. 18, Ex. 4, Affidavit of
Arcadio Avalos, Jr., p. 3, and Attach. B, memoranda from Arcadio Avalos, Jr., to
Marcie Nolan dated Mar. 30, 2004 and May 4, 2004 and investigation report.
Plaintiff argues that the safety coordinator opined that other factors also
contributed to Plaintiff's fall and that a witness to the incident did not state
that Plaintiff tripped over her skirt.   Resolution of this particular dispute in
favor of Plaintiff would not alter the court's conclusion that Defendant's safety
rule is reasonable and that the exception requested by Plaintiff potentially
would cost Defendant more than a slight amount.

[49]    Plaintiff's Response, Docket Entry No. 19, Ex. 1, Plaintiff's
Deposition, pp. 17, 20-23.

such attire increased job performance safety risks imposed an undue hardship on the employer. Johnson v. Sears Roebuck & Co., No. 01-2714, slip op. at 7-9 (W.D. La. Oct. 25, 2002), aff'd, 2003 WL 21016128 (5th Cir. 2003). The district court noted that, "Questions of undue hardship have been resolved as a matter of law where the employer showed that the proposed accommodation would either cause or increase safety risks or the risk of legal liability for the employer." Id. at p. 7. Concluding that the employer's pants-only policy was a legitimate safety rule, the court found that an exception to accommodate the employee's religious beliefs by allowing her to wear dresses or skirts would create an undue hardship on the employer "by decreasing worker morale, increasing risks of liability, and potentially increasing workers' compensation costs." Id. at p. 9.

The court finds the analysis in Johnson to be convincing and applicable to the present facts. The fact that Plaintiff, in this case, did work for two years in a skirt without a safety incident does not alter the court's conclusion. The law does not require that Defendant prove that it actually incurred costs in order to demonstrate that the proposed accommodation costs would be more than de minimis. See Bruff, 244 F.3d at 501; Weber v. Roadway Express, Inc., 199 F.3d 270, 275 (5th Cir. 2000). "The mere possibility of an adverse impact on co-workers . . . is sufficient to constitute an undue hardship." Weber, 199 F.3d at 274. Here,

15

Plaintiff's supervisor offered Plaintiff an accommodation that did cost Defendant in terms of additional labor hours and, ultimately, in terms of workers' compensation for Plaintiff's on-the-job injury.

Defendant also provided Plaintiff with the option of applying for another position.[50] Plaintiff met with Defendant's manager of employee relations about other available positions.[51] The only comparable position for which Plaintiff was qualified that did not require work on ladders was the position of information clerk.[52] Plaintiff applied for the position, but was not hired in favor of a bilingual candidate.[53] Although Defendant did not hire Plaintiff, it was not obligated to give her preference over a better qualified candidate. See Bruff, 244 F.3d at 502 and n.22 ("An employer cannot give preference to an employee because of his or her religion any more than it can discriminate against that employee for the same reason.").

As a matter of law, Defendant was unable reasonably to accommodate Plaintiff without experiencing more than de minimis

---

[50] See Defendant's Appendix, Docket Entry No. 18, Ex. 3, Affidavit of Marcie Nolan, Attach. D, Memorandum from Marcie Nolan to Plaintiff dated Mar. 29, 2004.

[51] Defendant's Appendix, Docket Entry No. 18, Ex. 3, Affidavit of Marcie Nolan, p. 6; Plaintiff's Response, Docket Entry No. 19, Ex. 1, Plaintiff's Deposition, p. 44.

[52] Defendant's Appendix, Docket Entry No. 18, Ex. 3, Affidavit of Marcie Nolan, p. 6.

[53] Id.; see also Plaintiff's Response, Docket Entry No. 19, Ex. 1, Plaintiff's Deposition, pp. 44-45.

costs. Defendant has met its burden on summary judgment, and Plaintiff's religion discrimination claim should be dismissed.

## IV. Conclusion

Based on the foregoing, the court **GRANTS** Defendant's Motion for Summary Judgment.

**SIGNED** in Houston, Texas, this _____ day of May, 2006.

NANCY K. JOHNSON
UNITED STATES MAGISTRATE JUDGE

17